# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JAMES CAPPADONIA,

                             :

         Petitioner,                        Case No. 1:11-cv-346

                             :            District Judge William O. Bertelsman
      -vs-                             Magistrate Judge Michael R. Merz

TIMOTHY BRUNSMAN, Warden,
  Lebanon Correctional Institution,

                             :

         Respondent.

---

## REPORT AND RECOMMENDATIONS

---

       This is a habeas corpus case brought pursuant to 28 U.S.C. § 2254. Petitioner is serving a sentence of life without parole in Respondent's custody after having been convicted by a jury of two counts of rape in violation of Ohio Revised Code § 2907.02(A)(1)(b) and one count of gross sexual imposition in violation of Ohio Revised Code § 2907.05(A)(4) (Amended Petition, Doc. No. 10, ¶¶ 3, 5, PageID 756.[1]) He pleads the following Grounds for Relief:

> **Ground One:** Mr. Cappadonia was denied due process and a fair trial when the State's medical expert vouched for the credibility of the alleged victim solely based on an interview conducted by a social worker and a report latent with the social worker's subjective opinion.
>
> **Ground Two:** Mr. Cappadonia was denied his right to confrontation when the subjective assessment of a social worker was introduced in a report relied upon by the State's medical expert despite the social

---

[1]An Amended Petition was filed on Judge Bowman's Order to conform the pleading to the requirements of S. D. Ohio Civ. R. 5.2(a)(3)(Doc. No. 9). This Court has ordered the original Petition sealed.

worker not being subject to cross-examination.

**Ground Three:** Mr. Cappadonia was denied his right to due process and a fair trial when the prosecutor committed prosecutorial misconduct by disparaging the accused, vouching for the alleged victim, inflamming [sic] the passions and prejudices of the jury, and speculating and arguing irrelevant issues.

*Id.* at PageID 6-8. On Order of Magistrate Judge Bowman, to whom this case was initially referred, Respondent has filed a Return of Writ (Doc. No. 6) and Petitioner has filed a Traverse (Doc. No. 13).

The background facts as recited by the court of appeals are as follows:

¶2 On February 29, 2008, appellant was indicted on two first-degree felony counts of rape of a child under the age of ten in violation of R.C. 2907.02(A)(1)(b), and three third-degree felony counts of gross sexual imposition in violation of R.C. 2907.05(A)(4). The indictment stemmed from allegations made by appellant's stepdaughter, V.P., that appellant sexually abused her in July of 2007 when she was nine years old.

¶3 At trial, V.P. testified that the first incident with appellant occurred on the evening of July 23, 2007. V.P.'s younger brother had injured himself earlier in the day and her mother had elected to stay with him at the hospital overnight. As V.P. got ready for bed, appellant told her that he wanted to sleep with her in her bed. V.P. testified that once in bed, appellant placed his hand down her underwear and rubbed her vagina with his fingers. He then pulled the covers down to the bottom of the bed, pulled off her pants and underwear, and licked her vagina. V.P. testified that when appellant asked her how it felt she replied, "It feels like I want to go to sleep." According to V.P., appellant stopped and she put her pants and underwear back on. Appellant apologized and told her that he would never do it again.

¶4 V.P. testified that the next morning, she and appellant were going to the hospital to pick up her mother and brother. Prior to leaving, appellant told V.P. to take a shower. V.P. testified that while she was in the shower, appellant came into the bathroom and told her that he wanted to shower with her. V.P. testified that as appellant stood

-2-

behind her and shampooed her hair, she felt his penis "rubbing against" her lower back.

¶5 According to V.P., the third incident occurred on July 29, 2007. V.P.'s maternal grandmother had suffered a heart attack, and her mother was once again at the hospital overnight. V.P. testified that she and appellant watched a movie together at their house. Afterwards, appellant unbuttoned his boxer shorts, placed V.P.'s hand on his penis and "made her hand go up and down" on it. V.P. testified that appellant then stood up and "made me put his penis in my mouth." V.P. stated that liquid came out of appellant's penis and she thought he was "peeing in [her] mouth."

¶6 Several months later, on January 4, 2008, V.P. informed her mother of the incidents with appellant. The allegations were reported to the Hamilton Township Police Department and an investigation ensued, during which appellant denied the allegations of abuse.

¶7 Following a three-day jury trial in October 2008, appellant was found guilty of both rape counts and one count of gross sexual imposition.[footnote omitted.] He was sentenced to life imprisonment on each of the rape counts, and five years in prison on the gross sexual imposition count. The trial court ordered appellant's sentence for gross sexual imposition to run concurrently with the life sentences for rape.

*State v. Cappadonia*, Case No. CA2008-11-138, 2010 Ohio 494, 2010 Ohio App. LEXIS 419 (Ohio App. 12th Dist. Feb. 16, 2010).

## Procedural History

Petitioner was indicted by the Warren County Grand Jury on two counts of rape of a child under thirteen and three counts of gross sexual imposition. One of the latter counts was dismissed on motion and the jury acquitted Petitioner on one of the others, but found him guilty of the remaining counts. He was then sentenced to the term of imprisonment he is now serving.

Mr. Cappadonia then appealed to the Warren County Court of Appeals raising six assignments of error. All were overruled and the judgment affirmed. *State v. Cappadonia, supra.* Petitioner appealed to the Ohio Supreme Court which declined to hear the case. *State v. Cappadonia*, 125 Ohio St. 3d 1463 (2010). The instant Petition followed.

## Ground One

In his First Ground for Relief, Petitioner claims he was denied due process and a fair trial when the State's medical expert vouched for the credibility of the victim, V.P. According to the Amended Petition, Dr. Makoroff, the State's medical expert, testified that V.P. was probably the victim of sexual abuse, but in doing so relied only on V.P.'s statement to social worker Cecilia Fryhopper and not on any physical findings, thus constituting only a vouching for V.P. and an "inva[sion] of the province of the jury." (Amended Petition, Doc. No. 10, PageID 773-774.)

## Procedural Default: Lack of Contemporaneous Objection

Respondent asserts this Ground for Relief is barred by Petitioner's failure to make a contemporaneous objection to Dr. Makoroff's testimony.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice

-4-

> as a result of the alleged violation of federal law; or demonstrate that
> failure to consider the claims will result in a fundamental miscarriage
> of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that
> is applicable to the petitioner's claim and that the petitioner failed to
> comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually
> enforced the state procedural sanction, citing *County Court of Ulster
> County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777
> (1979).

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d at 138.

This Ground for Relief was presented as the First Assignment of Error on direct appeal. The court of appeals decided it as follows:

¶11 In his first assignment of error, appellant contends that the state's medical expert improperly bolstered V.P.'s credibility to the jury.

¶12 The state presented the testimony of Dr. Kathy Makoroff, a pediatrician at the Mayerson Center at Cincinnati Children's Hospital. The Mayerson Center is a child-advocacy unit of the hospital that evaluates children who are suspected victims of physical and sexual abuse. Makoroff testified that she examined V.P. on January 7, 2008. Prior to the examination, V.P. was interviewed by a social worker employed by the center. V.P. provided the social worker with a detailed history of the alleged sexual abuse, recounting the events of July 2007. V.P. stated that on July 23, appellant "touched my privates with no underwear or pants on me." The history included additional allegations that appellant performed cunnilingus on V.P., and that he forced her to perform fellatio on him on July 29. The social worker recorded V.P.'s statements in the history section of her report, which was provided to Makoroff prior to conducting her physical examination of V.P.

¶13 In Makoroff's written report, which was read into evidence and admitted as a state exhibit at trial, she noted that V.P.'s physical examination revealed no signs of injury and that her laboratory work was normal. Based on the history provided by V.P., her physical examination, and the laboratory data, Makoroff's impression in her written report was "concerning/probable abuse." Makoroff explained at trial that a normal physical exam can be seen in children who have been sexually abused and does not exclude the possibility of abuse.

She testified that "upwards of 90 percent" of children who disclose a history of sexual abuse have normal physical examinations, and that the majority of the children she examines who have been sexually abused show no physical signs of abuse. She also stated that the acts alleged by V.P. would not "automatically" cause injury to her.

¶14  Appellant contends that Makoroff's testimony improperly bolstered V.P.'s credibility because there was no physical evidence of abuse. He argues that in the absence of physical findings, Makoroff relied solely on V.P.'s unsupported statements to the social worker in forming her opinion, thereby "indirectly vouching" for V.P.'s credibility to appellant's prejudice at trial.

¶15 The record indicates that appellant did not object to Makoroff's testimony. In failing to object, appellant has waived all but plain error. See Crim.R. 52(B). Plain error exists where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002 Ohio 68, 759 N.E.2d 1240. The burden is on the defendant to show a violation of his substantial rights. *State v. Perry*, 101 Ohio St.3d 118, 2004 Ohio 297, ¶14, 802 N.E.2d 643. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Landrum* (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710.

¶16 At the outset, we note that although appellant appears to argue otherwise, it was proper for Makoroff to rely on the history provided by V.P. to the social worker in forming her opinion. Makoroff testified that the history was obtained for the purpose of medical diagnosis, and aided her in determining a course of testing and treatment for V.P. Evid.R. 803(4) establishes a hearsay exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." This exception has been extended to statements made to hospital social workers, "if the purpose of the statement was to help initiate medical diagnosis or treatment." *State v. Cashin*, Franklin App. No. 09AP-367, 2009 Ohio 6419, ¶16. *See, also, State v. Muttart*, 116 Ohio St.3d 5, 2007 Ohio 5267, 875 N.E.2d 944. The history provided by V.P. clearly falls within the purview of Evid.R. 803(4).

¶17 With respect to appellant's claim of improper vouching, he correctly states that in *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, the Ohio Supreme Court held that an expert witness may not testify as to the veracity of the statements of a child victim because it is the fact-finder who bears the burden of assessing the credibility and veracity of witnesses. However, *Boston* does not prohibit an expert from giving their opinion as to whether a child has been sexually abused where that opinion is based upon the expert's medical examination of the victim, the victim's statements to the expert, and the victim's history. *State v. France* (Mar. 4, 1992), Summit App. No. 15198, 1992 Ohio App. LEXIS 908, 1992 WL 41285 at *2, citing *Boston* at 128.

¶18 Upon review of Makoroff's testimony, we find no indication that she testified as to the truth of V.P.'s statements or vouched for her credibility. "Only statements directly supporting the veracity of a child witness are prohibited under *Boston*." *State v. Cashin,* Franklin App. No. 09AP-367, 2009 Ohio 6419, ¶20, citing *State v. Rosas*, Montgomery App. No. 22424, 2009 Ohio 1404, fn. 1. Although appellant claims that the effect of Makoroff's testimony indirectly bolstered V.P.'s credibility, "indirect bolstering of a victim's credibility is not the same as the direct rendering of an opinion as to a victim's veracity that was involved in *Boston*." *Id.*

¶19 In addition, Makoroff testified repeatedly that her opinion was based upon V.P.'s history as well as the results of her medical examination. Although, as appellant points out, there was no physical evidence of abuse, this fact was still medically significant to Makoroff. She testified that a high percentage of children who are sexually abused do not exhibit physical signs of abuse. She further opined that the alleged abuse in V.P.'s case would not necessarily cause injuries, and that the six-month lapse of time from the alleged abuse to the date of the physical examination would certainly allow any injuries to heal. Since Makoroff's opinion was based both on V.P.'s physical examination and history, we find that it did not run afoul of *Boston. See France*, 1992 Ohio App. LEXIS 908, at *2 (expert opinion of abuse did not violate *Boston* where the exam produced no physical evidence of abuse because lack of physical findings was medically significant to expert).

¶20 Moreover, unlike the child victim in *Boston* who was unavailable to testify, V.P. testified at trial and described detailed instances of abuse. She was subject to cross-examination regarding her allegations and the jury was able to independently assess her

credibility. *State v. Smith*, Butler App. No. CA2004-02-039, 2005 Ohio 63, ¶22; *State v. Proffitt* (1991), 72 Ohio App.3d 807, 809, 596 N.E.2d 527. As a result, it cannot be said that the result of the trial would have been otherwise absent Makoroff's testimony.

¶21 Based on the foregoing, we find that trial court's admission of Makoroff's testimony did not constitute error, plain or otherwise. Appellant's first assignment of error is therefore overruled.

*State v. Cappadonia, supra.*

In response to the procedural default defense, Petitioner asserts that a proper objection was made and the court of appeals did not in any event rely on the failure to object, but performed a review "which exceeded that of a plain error examination." (Traverse, Doc. No. 13, PageID 809.)

Petitioner does not deny that Ohio has a relevant procedural rule requiring a contemporaneous objection to error. Ohio, like most common law jurisdictions, does indeed have such a rule. *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). Petitioner also does not deny that this rule is an adequate and independent state ground for decision if relied on, and that is also correct. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012)(citing *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

However, Petitioner says, "[i]n order for Cappadonia's claims to be procedurally defaulted, the [court of appeals] must have relied on Cappadonia's failure to object by preforming [sic] only

a 'plain error' analysis." (Traverse, Doc. No. 13, PageID 810, *citing Dowdell v. Wilson*, No. 06-404, 2007 WL 1299269 (N.D. Ohio, May 2, 2007).

The court of appeals' analysis of the First Assignment of Error is thorough, but it also plainly held that Cappadonia had failed to object and that this waived all but plain error. *State v. Cappadonia, supra,* ¶ 15. A State does not waive a procedural default by conducting plain error analysis. A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

Petitioner has miscited *Dowdell, supra.* Magistrate Judge Baughman, who wrote the report and recommendations which became the decision of the court on Dowdell's failure to object, plainly held that review for "plain error" or "manifest injustice" does not waive a failure to make a contemporaneous objection. *Dowdell* at *6, *citing Seymour, supra,* and *Scott v. Mitchell*, 209 F.3d 853, 868 (6th Cir. 2000).[2]

Petitioner's other response to the procedural default defense is to claim that he did in fact comply with the contemporaneous objection rule. Although he admits he did not object to Doctor

---

[2]Judge Baughman's relevant holding is at the exact place in his opinion called out by Petitioner's pinpoint citation at Traverse, PageID 810. How Petitioner's counsel extracted the proposition for which she cited *Dowdell* from what Judge Baughman actually wrote is opaque, at best.

Makoroff's reading of the assessment portion of her report into the record when that occurred,

> he did not at that time have the privilege of knowing the social
> worker would not be testifying at trial. When the state attempted to
> admit the report despite the social worker not testifying, the defense
> promptly objected to admission of the report. Had the court properly
> granted the objection and precluded the "assessment" portion of the
> social worker's report from being admitted into evidence, the
> portions of Dr. Makoroff's testimony based upon the "assessment"
> would have been stricken.

(Traverse, Doc. No. 13, PageID 811.)

It is an entirely new idea in trial practice to this judge that a trial attorney can allow hearsay testimony consisting of reading a declarant's out-of-court statement without objection and then later when the document from which the hearsay was read is offered in evidence obtain not only a bar to its admission, but also striking of testimony based on the hearsay. Not surprisingly, Petitioner cites no Ohio law to support any portion of that idea. The whole purpose of the contemporaneous objection rule is to prevent error from happening or to correct it when it is fresh. Whether or not the trial court was correct in overruling Petitioner's objection to the written assessment, there is no question that as a matter of Ohio law, as held by the court of appeals in this case, an objection to the document does not "relate back" and cure the failure to object when the hearsay was read into the record.

In sum, Respondent has satisfied all four prongs of the *Maupin* analysis. Petitioner has not shown that he made a contemporaneous objection as required by Ohio law or that the court of appeals waived that default by deciding the First Assignment of Error on the merits. The First Ground for Relief should therefore be dismissed with prejudice for lack of contemporaneous objection.

## Procedural Default: Lack of Fair Presentation

Respondent also asserts the First Ground for Relief was procedurally defaulted when it was not presented to the Ohio courts as a federal constitutional claim (Return of Writ, Doc. No. 6, PageID 56). Petitioner responds that he met this requirement by relying on "state cases employing the federal constitutional analysis in question." (Traverse, Doc. No. 13, PageID 814, citing *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000).) In particular, Cappadonia relies on his having cited *State v. Boston,* 46 Ohio St. 3d 108 (1989), to both the Warren County Court of Appeals and in his Memorandum in Support of Jurisdiction to the Ohio Supreme Court.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450

F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).

A petitioner fairly presents a federal habeas claim to the state courts only if he "asserted both the factual and legal basis for his claim. *Hicks v. Straub*, 377 F.3d 538 (6th Cir. 2004), citing *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); and *Picard v. Connor*, 404 U.S. 270, 276, 277-78 (1971).

> In determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, we consider whether: 1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; 2) the petitioner relied upon federal cases employing the constitutional analysis in question; 3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or 4) the petitioner alleged "facts well within the mainstream of [the pertinent] constitutional law."

*Hicks* at 552-53, citing *McMeans*, 228 F.3d at 681.

*State v. Boston*, relied on by Petitioner, was a child sexual abuse case which involved state law questions of the child victim's competence to testify, the breadth of testimony allowed from an expert witness, the admissibility of hearsay from a child victim and federal Confrontation Clause questions relating to the child victim. 46 Ohio St. 3d at 113. In the court of appeals Cappadonia did

not state a claim for violation of the Confrontation Clause at all. His citation of *Boston* was solely related to that case's holding about the breadth of permissible expert testimony and not to its holding under the Confrontation Clause (See Brief of Defendant-Appellant, Return of Writ, Doc. No. 6, Ex. 7, PageID 106). Conversely, the Confrontation Clause question was the only federal constitutional question considered by the *Boston* court. It did not deal with any claim that it was unconstitutional to permit expert testimony which bolstered the credibility of a child victim; the vouching portion of the opinion cites neither the text of the United States Constitution nor any federal case law interpreting the Constitution as bearing on bolstering or vouching testimony.

The court of appeals in deciding the First Assignment of Error did not evince any understanding that it was deciding a federal constitutional question. It did not cite any federal case law and its citation to *Boston* was limited to that case's holding about expert opinion on credibility of a child victim.

The Magistrate Judge concludes Petitioner did not fairly present his First Ground to Relief as a federal constitutional claim to the Ohio courts. He therefore procedurally defaulted that claim and is barred from obtaining merit review in habeas corpus. On this basis as well, the First Ground for Relief should be dismissed with prejudice.

**Merits Analysis**

In the alternative, in the event the Court should reject the Magistrate Judge's procedural default analysis, the following merits analysis of Ground One is offered.

Petitioner acknowledges that to prevail on this claim, he must show as required by 28 U.S.C. § 2254(d) that the state court's decision is contrary to, or an objectively unreasonable application of, clearly established Supreme Court precedent, "or was based on an unreasonable determination of the facts." (Traverse, Doc. No. 13, PageID 814, *citing Roberts v. Carter*, 337 F. 3d 609, 612 (6th Cir. 2003.) Petitioner claims he is entitled to relief under both § 2254(d)(1) and (d)(2).

On the factual side, Petitioner asserts that for a medical expert to offer an opinion, in the absence of physical findings, that there has been sexual abuse, "there must be something other than the child's unsupported allegations that assisted the expert in arriving at his or her opinion." (Traverse, Doc. No. 13, PageID 817, *quoting State v. Winterich*, No. 895812008 WL 1747433 (Ohio App. 8th Dist. 2008).) Petitioner says the court of appeals illogically concluded that there was something more than V.P.'s unsupported allegations.

First of all, Doctor Makoroff did not give an opinion that V.P. had been sexually abused. Her written opinion, as recited by the court of appeals, was "concerning/probable abuse." In his Brief on appeal, Petitioner characterized this opinion as being that V.P. had probably been abused. (Brief, Return of Writ, Doc. No. Ex. 6, n. 9, PageID 104, citing Trial Tr. Vol. 1, p. 229.) Examining that portion of the transcript, the Magistrate Judge notes the relevant testimony was as follows:

> Q.     In this particular document [the doctor's report] it says concerning and probable cause, are there different types of impressions and diagnosis in these types of cases?
>
> A.     Yes .
>
> Q .    Okay. Can you please explain?
>
> A.     Yes , and I will tell you that on our report where it says physicians [sic] impression slash diagnosis based on interview exam and laboratory data , we can check a box. So we have one of five choices that we can check.

The first one is no concern for abuse, the second one is possible, nonspecific slash possible abuse, the third one is concerning probably abuse, the fourth one is definite abuse and the fifth one is unable to determine.

So I am forced to generate the chart to check one of those boxes. I like more to rely on my handwritten impression which is on the bottom.

Q.     Okay.

A.     The bottom section.

Q.     Well in this particular case before we go to the handwritten impression, in this particular case what exactly was your impression based on the box checking.

A.     Concerning slash probably abuse.

(Trial Tr., Attachment to Doc. No. 8, PageID 550-551.)  The court of appeals' determination about what the doctor's expressed opinion was is a perfectly accurate summary of this testimony.

Petitioner then says it was illogical for the court of appeals to conclude there was something more than V.P.'s statements to support that opinion.  As the court of appeals found, however, there was something more: the report by social worker Cecilia Fryhopper of her interview with V.P.  In addition, the court of appeals found that the results of the physical examination Doctor Makoroff performed were relevant to her opinion.  Her testimony about those findings was also relevant.  A jury might think that without any physical findings, there could not have been abuse.  Doctor Makoroff testified that many abused children have normal examinations, that the kinds of abuse to which V.P. testified she had been subjected (cunnilingus and fellatio, rather than vaginal or anal intercourse) would not necessarily cause any physical findings, and the six-month time between the reported abuse and the examination would have been ample time for healing in any event.

In complaining about the allowance of this opinion, Petitioner relies almost entirely on state

-16-

law cases: *State v. Davis*, 64 Ohio App. 3d 334 (1989); *State v. Winterich,* No. 89581, 2008 WL 1747433 (Ohio App. 8th Dist. 2008); *State v. Hollon*, No. 0990-03-029, 1991 Ohio App. LEXIS 326 (2001); *State v. Campbell,* Nos. C-10567, C-010596, 2002 Ohio App. LEXIS 1158 (2002); and *State v. Boston, supra*. (Traverse, Doc. No. 13, PageID 816-818, footnotes 27-39. To state the obvious, none of these are United States Supreme Court cases. The only Supreme Court case cited in this portion of the argument is *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). The holding in that case has nothing to do with expert witness vouching for credibility.

The court of appeals did not apply any Supreme Court law, so that branch of § 2254(d)(1) is not applicable. Its decision was not contrary to any Supreme Court precedent – no such precedent is cited by Petitioner or known to the Magistrate Judge on the constitutionality of expert bolstering of child victim testimony. Finally, as shown by the above quotation from Doctor Makoroff's testimony, the court of appeals decision is not based on "an unreasonable determination of the facts in light of the evidence presented."

Therefore, if the Court determines to reach the merits of the First Ground for Relief, it should be dismissed with prejudice on the basis of this alternative merits analysis.

## Ground Two

In his Second Ground for Relief, Petitioner claims his right to confront his accusers was violated when the social worker's assessment was introduced in a report and she was not subject to cross-examination.

**Procedural Default: Lack of Contemporaneous Objection**


The Warden asserts this claim is also barred by the lack of contemporaneous objection which also barred the First Ground (Return of Writ, Doc. No. 6, PageID 46.)  Petitioner raised this claim as his Second Assignment of Error on direct appeal.  The court of appeals decided it as follows:

> ¶24 In his second assignment of error, appellant argues that the trial court erred in allowing Makoroff to read the content of the "assessment" portion of the social worker's report into evidence because the social worker did not testify at trial. Appellant further contends that the court erred in admitting the assessment into evidence as a state exhibit. According to appellant, without the opportunity to cross-examine the social worker, the admission of the assessment violated his constitutional rights under the Confrontation Clause.

> ¶25 The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L. Ed. 2d 177, the United States Supreme Court held that testimonial statements by witnesses offered to establish the truth of the matter asserted are inadmissible unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. A critical portion of this holding is the phrase "testimonial statements." Although *Crawford* did not provide a comprehensive definition as to what constitutes a testimonial statement, it includes one made "under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz v. Massachusetts* (2009), U.S. , 129 S.Ct. 2527, 2529, 174 L. Ed. 2d 314, quoting *Crawford* at 52. In determining whether a statement is testimonial, courts should focus on "'the expectation of the declarant at the time of making the statement.'" *In re J.M., Pike* App. No.08CA782, 2009 Ohio 4574, ¶46, quoting *State v. Stahl*, 111 Ohio St.3d 186, 2006 Ohio 5482, 855 N.E.2d 834, paragraph one of the syllabus.

> ¶26 Makoroff testified that the assessment portion of the report was comprised of what the social worker concluded from the history that she received from V.P. The assessment at issue provided:

¶ 27 [Patient] is a bright, articulate 9 [year-old] girl who reports [appellant] had oral-vaginal contact to this [patient], [appellant] forced this [patient] to have oral-penile contact with him [with] ejaculation, [appellant] forced the [patient] to masturbate him and [appellant] fondl[ed] this [patient's] vaginal area. This information, along with specific details that the [patient] is able to provide is consistent with inappropriate sexual contact. Based on this information, a medical exam is indicated.

¶28 At the outset, we note that appellant did not object when Makoroff read the contents of the assessment into evidence from the witness stand. Moreover, although he objected to the admission of the assessment into evidence as a state exhibit, the objection was not based on the specific ground that he now advances on appeal. Evid.R. 103(A)(1) provides that a claim of error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected and, if the ruling is one admitting evidence, the opponent of the evidence raises a timely objection to the evidence, stating the specific ground of objection, unless the ground of objection is apparent from the context. See *State v. O'Connor*, Fayette App. No. CA2007-01-005, 2008 Ohio 2415, ¶27. In this case, appellant's objection was based on hearsay grounds, and our review of the record indicates that the trial court's comments in overruling his objection focused on whether the statements fell under the hearsay exception for statements made for purposes of diagnosis and treatment. There is no indication that the court understood that appellant was challenging the admission of those statements as violating his rights under the Confrontation Clause. *See State v. Schewirey,* Mahoning App. No. 05 MA 155, 2006 Ohio 7054, ¶16.

¶29 As a result of appellant's failure to specifically object to the admission of the social worker's assessment on Confrontation Clause grounds, we need only determine whether the admission of the assessment constituted plain error on the part of the trial court. *O'Connor* at ¶28. Upon review, we find that appellant has failed to demonstrate the existence of plain error. Initially, we note that the first sentence of the assessment summarily recounts the history provided to the social worker by V.P. As a result, V.P. is the out-of-court declarant with respect to that statement. Because V.P. testified at trial and was subject to cross-examination with regard to her interview with the social worker, the Confrontation Clause is not implicated. *See State v. Williams,* Butler App. No. CA2007-04-087,

2008 Ohio 3729, ¶31.

¶30 In addition, although the remainder of the assessment is comprised of statements made by the social worker regarding her interview with V.P., we conclude that those statements were not testimonial in nature in violation of *Crawford*. There is no evidence to indicate that at the time the statements in the assessment were made, the social worker could have objectively believed that they would be available for use at a later trial. Testimony at trial indicated that the primary purpose for interviewing V.P. was for information gathering purposes to assist the medical staff at the hospital in diagnosing and treating her. The assessment specifically provides that based on the information provided by V.P., a medical examination was indicated.

¶31 Moreover, the statements in the assessment were not central to the state's case, and contrary to appellant's argument, there is no indication that Makoroff specifically relied upon the social worker's statements in the assessment portion of the report. She testified to relying only on the history provided by V.P. As a result, it cannot be said that the outcome of appellant's trial would have clearly been otherwise had the assessment been excluded from evidence.

¶32 Appellant's second assignment of error is therefore overruled.

*State v. Cappadonia, supra.*

As a cursory reading demonstrates, the court of appeals was as clear in finding lack of contemporaneous objection and performing plain error analysis on this claim as it was on the vouching claim.

Petitioner argues in the Traverse

[a] key problem with this argument, originally made in the Twelfth District Court of Appeals and now made by Respondent, is the determination hearsay and confrontation are two separate issues requiring separate and unique objections. Instead, only one objection is necessary because the determination of whether a statement is hearsay is central to a confrontation analysis under *Crawford v. Washington*.

(Doc. No. 13, PageID 812-813.) In making this argument, Petitioner cites no Ohio law contrary to

-20-

the court of appeals holding that Ohio R. Evid. 103 requires that the specific ground of objection be stated. Nor does Petitioner cite any portion of the record suggesting the court of appeals was in error in finding that the objection actually made focused on whether the social worker's report was or was not admissible hearsay under the exception for statements made for medical diagnosis. Ohio is perfectly free to construe its own contemporaneous objection rule to require specificity in the objection. It would defeat the purpose of the contemporaneous objection rule to allow a litigant to preserve any and all hearsay-related objections by merely saying "Objection. Hearsay," and leaving the trial judge to speculate, at peril of reversal, what actual objection is being made. In any event, the question of how specific an objection must be is a question of state law on which this Court is bound by decisions of the Ohio courts, including those made in the case in suit.

By never mentioning the Confrontation Clause in his objections to the social worker's report and never objecting at all when Doctor Makoroff read it, Petitioner procedurally defaulted on his Second Ground for Relief and it should be dismissed with prejudice on that basis.

**Merits Analysis**

In the event the Court finds the foregoing procedural default analysis unpersuasive, the Magistrate Judge offers the following merits analysis for sake of completeness.

The court of appeals concluded, on plain error review, that Petitioner's Confrontation Clause claim was without merit. As noted above, when a state court decides a federal constitutional claim, its decision can be reversed in habeas only if it is contrary to or an objectively unreasonable

application of the holdings of Supreme Court precedent. The opinion of a state court on plain error review is still entitled to AEDPA deference if the federal court reaches the merits despite the procedural default. *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009).

Petitioner acknowledges this standard of review (Traverse, Doc. No. 13, PageID 821-822). he argues the court of appeals' decision was contrary to or an unreasonable application of *Crawford v. Washington*, 541 U.S. 36 (2004), which held, as a matter of constitutional law, that testimonial statements of a witness are admissible at trial only if the witness is unavailable and the defendant has had a prior opportunity to cross-examine. *Id.* at 53-54.

The court of appeals plainly recognized *Crawford*'s applicability and its development on the issue of what constitutes "testimonial" statements in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). The key to that determination, the court of appeals held, is the expectation of the declarant at the time of making the statement. *State v. Cappadonia, supra,* at ¶ 35. That is the same standard the Sixth Circuit applies:

> The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.

*United States v. Cromer,* 389 F.3d 662, 675 (6th Cir. 2004). Petitioner argues that the report in question was "made to aid in the police investigation. . . . Fryhopper is a forensic interviewer who interviewed V.P. as part of the police investigation." (Traverse, Doc. No. 13, PageID 824.) No record references are offered to prove that characterization of Ms. Fryhopper's role. The court of appeals found, however, that "the primary purpose for interviewing V.P. was for information gathering purposes to assist the medical staff at the hospital in diagnosing and treating her." *State*

-22-

*v. Cappadonia, supra,* ¶ 30. There is no showing – not even an attempted showing by record reference – that this determination is unreasonable in light of the evidence presented. See § 2254(d)(2).

On the alternative merits analysis, Ground Two should be dismissed with prejudice because the court of appeals' decision was not an objectively unreasonable application of *Crawford* and its progeny.

## Ground Three

In Ground Three Petitioner complains of various instances of asserted prosecutorial misconduct.

## Procedural Default: Lack of Contemporaneous Objection

As with Grounds One and Two, the Warden asserts Ground Three is barred by lack of contemporaneous objection. This claim was raised as the Third Assignment of Error on direct appeal, resulting in the following decision:

> {¶40} In his third assignment of error, appellant contends that the state committed prosecutorial misconduct in its closing argument. Appellant alleges that the state disparaged him, vouched for the credibility of V.P., inflamed the passions and prejudice of the jury, and argued irrelevant issues that were not supported by the evidence. Appellant failed to object to these alleged instances of misconduct.

Therefore, he has waived all but plain error. See Crim.R. 52(B).

{¶41} In order to determine whether a prosecutor's remarks constitute misconduct, a court must consider the following: "(1) whether the remarks were improper; and, if so, (2) whether the remarks prejudicially affected a defendant's substantial rights. * * * To demonstrate prejudice, a defendant must show that the improper remarks or questions were so prejudicial that the outcome of the trial would clearly have been otherwise had they not occurred." *State v. Jones*, Butler App. No. CA2006-11-298, 2008 Ohio 865, ¶21. (Citations omitted.) In reviewing allegations of prosecutorial misconduct, it is the duty of this court to consider the complained of conduct in the context of the entire trial. *State v. Waters,* Butler App. No. CA200211-266, 2003 Ohio 5871, ¶23. The touchstone of the analysis is the fairness of the trial, not the culpability of the prosecutor. *State v. Lott* (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293. The Ohio Supreme Court has held that prosecutorial misconduct is not ground for error unless the defendant has been denied a fair trial. *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 Ohio B. 379, 473 N.E.2d 768; *State v. Ghee*, Madison App. No. CA2008-08-017, 2009 Ohio 2630, ¶42.

¶ 42 At the outset, we observe that the jury was instructed that the statements made by the parties during closing arguments were not evidence. *Bell*, 2009 Ohio 2335 at ¶85. We must therefore presume that the jury followed the trial court's instructions. *Id.*

¶43 Appellant initially contends that in its rebuttal argument, the prosecutor injected his personal opinion regarding the credibility of appellant's testimony when he stated that appellant's testimony was "unbelievable." The prosecutor appeared to be referring to appellant's explanation at trial as to why V.P. was able to provide specific details regarding the alleged sexual abuse. The prosecutor stated:

> ¶44 "When I was thinking about this case last night, I really got to the point where if you did not, after looking at [V.P.'s] testimony and listening to what she said and how she described it and her mannerism and going up and down and talking the kind of talk with all that stuff in her mouth and then listening to that unbelievable story coming from that man." If that still did not convince you beyond a reasonable doubt there is absolutely nothing I thought that I could say

to change your mind." (Emphasis added.)

¶45 Appellant testified on direct examination that he believed V.P. had learned about sex from the internet and by inadvertently observing him and her mother engaging in sexual acts. However, on cross-examination, appellant testified that V.P. learned about sex from him in the context of a discussion about child abduction on July 23, 2007. Appellant told V.P. that if she was abducted, she could be sexually abused. He testified to describing cunnilingus and fellatio in detail to her, including what semen would taste like. He also discussed vaginal intercourse with her.

¶46 Appellant claims that in stating that his testimony was "unbelievable," the prosecutor was improperly expressing his opinion as to appellant's credibility. A prosecutor may comment upon the testimony and suggest the conclusions to be drawn from it, but "a prosecutor cannot express his personal belief or opinion as to credibility of a witness or as to the guilt of the accused, or go beyond the evidence which is before the jury." *State v. Stone*, Warren App. No. CA2007-11-132, 2008 Ohio 5671, ¶27. In this case, although the prosecutor made reference to the credibility of appellant's testimony regarding V.P.'s knowledge of particular sexual acts, his statement fell short of directly commenting on appellant's credibility. Moreover, the prosecutor's statement was based on evidence in the record. "It is well-established that 'the prosecutor is permitted to make a fair comment on the credibility of witnesses based upon their testimony in open court.'" *State v. Brown*, Warren App. No. CA2002-03-026, 2002 Ohio 5455 at ¶22, *quoting State v. Mundy* (1994), 99 Ohio App.3d 275, 304, 650 N.E.2d 502.

¶47 Appellant also claims that the prosecutor improperly vouched for V.P. in his rebuttal argument when he made the following statements: "There's absolutely no justification for [V.P.] to make [the allegations] up except for the fact that it happened to her;" and "It's that child's fault that she didn't come forward immediately when she's living with her abuser. Let me tell you something, six months later is pretty darn good for a child who is day in and day out living [with] her abuser."

¶48 Improper vouching occurs when the prosecutor implies knowledge of facts outside the record or places their personal credibility in issue. *State v. Davis*, 116 Ohio St.3d 404, 2008 Ohio 2, ¶232, 880 N.E.2d 31. We do not find improper vouching present in these remarks, as the prosecutor was responding to statements made

by appellant in his closing argument regarding the lack of physical evidence to support V.P.'s allegations of abuse, as well as the state's theory that V.P. fabricated the allegations because she was upset that appellant was a strict disciplinarian. In addition, the prosecutor did not place his credibility at issue or allude to any knowledge of facts outside the record, as Makoroff testified at trial that it was not uncommon for children living with their abusers to delay reporting abuse. *See, also, State v. Jackson,* 107 Ohio St.3d 53, 2005 Ohio 5981, ¶119-¶120, 836 N.E.2d 1173 (no improper credibility vouching present where the prosecutor stated that the witness "had no motive to lie. No motive. None whatsoever").

¶49 Appellant further claims that the prosecutor improperly inflamed the passions and prejudice of the jury by making the following statement:

> ¶50 "Because [V.P.] told what were the consequences to her family. They lost their house, she lost her dogs, she lost having the man around again, granted I don't think she wants to see this man around anymore but there was something there about having financial support. She didn't benefit from this. She's getting herself into trouble, in fact that poor child got up there and said to you about the fact that she almost wished she had not said anything because you know, she feels guilty that her mommy is now a single mother of six. She feels guilty that they lost their house and they lost their dogs. She is internalizing all of this."

¶51 Statements that may "inflame the passions and prejudice of the jury" are deemed improper because they wrongly "'invite the jury to judge the case upon standards or grounds other than those upon which it is obligated to decide the case, namely, the law and the evidence.'" *State v. Cunningham*, 178 Ohio App.3d 558, 2008 Ohio 5164, ¶27, 899 N.E.2d 171, *quoting State v. Draughn* (1992), 76 Ohio App.3d 664, 671, 602 N.E.2d 790. However, we do not find that the prosecutor's comments improperly inflamed the jury, as the comments were based on the testimony of V.P. regarding the effect of the abuse on her family. In addition, the prosecutor was responding to appellant's assertion in his closing argument that V.P. fabricated the allegations.

¶52 Finally, appellant argues that the prosecutor engaged in improper speculation and argued irrelevant issues by stating: "Now in that nine

year old's mind, if it started off with licking and went into her mouth and ejaculated, God knows what the next step would have been. Although we can infer, because he told her and talked to her about vaginal intercourse. Could that [have] been the next step that would have happened? Is that the reason she told?"

¶53 Prosecutors are entitled to wide latitude in closing argument as to what the evidence has shown and what inferences may be drawn therefrom. *State v. Wright*, Butler App. No. CA2003-05-127, 2004 Ohio 2811, ¶24. However, prosecutors must avoid making insinuations and alluding to matters not supported by admissible evidence. *Id*. Here, although there was evidence that appellant had explained vaginal intercourse to V.P., we find that the prosecutor's statement as to what V.P. was thinking when she informed her mother of the alleged abuse, and his alluding to the "next step" of abuse were speculative in nature. However, in the context of the entire trial, we do not find that these statements prejudiced appellant. The remarks therefore do not rise to the level of plain error. Appellant's third assignment of error is accordingly overruled.

*State v. Cappadonia, supra.*

As to this Third Ground for Relief, Petitioner makes no response to the Warden's procedural default claim beyond what he argued generally about the court of appeals' decision being too detailed and in depth to count as plain error review. For the reasons set forth above as to Ground One, this argument is not persuasive. The court of appeals found as to these claims as well that Petitioner's counsel did not object and the record completely supports that finding. By engaging in a thorough discussion of the merits while restricting its standard of review to plain error, it enforced the Ohio contemporaneous objection rule. Petitioner's Third Ground for Relief is thus procedurally defaulted and should be dismissed on that basis.

## Merits Analysis

As with the first two Grounds for Relief, the Magistrate Judge offers the following alternative analysis of the merits. As noted with the Second Ground, the Warren County Court of Appeals plain error merits analysis is entitled to AEDPA deference. *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009).

On habeas corpus review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright,* 477 U.S. 168 (1986); *Wogenstahl v. Mitchell*, 668 F.3d 307, 327-328 (6th Cir. 2012), *citing Smith v. Mitchell,* 567 F.3d 246, 265 (6th Cir. 2009); *Bates v. Bell*, 402 F.3d 635, 640-41 (6th Cir. 2005); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999) or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir. 1979); *accord Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom*, *Watkins v. Sowders*, 449 U.S. 341 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir. 1983). The court must first decide whether the complained-of conduct was in fact improper. *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003), *citing United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). A four-factor test is then applicable to any conduct the Court finds inappropriate: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and whether the evidence against the defendant was strong." *Id.* The court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the

competent proof of guilt. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The court must examine the fairness of the trial, not the culpability of the prosecutor. *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993)(*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982). In *Serra*, the Sixth Circuit identified factors to be weighed in considering prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.,* at 1355-56 (quoting *Angel*, 682 F.2d at 608). The misconduct must be so gross as probably to prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 572 (1997); *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir. 1988). Claims of prosecutorial misconduct are reviewed deferentially on habeas review. *Thompkins v. Berghuis,* 547 F.3d 572 (6th Cir. 2008), citing *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

The first asserted instance of prosecutorial misconduct is the prosecutor's labeling unbelievable Petitioner's testimony about how he explained sexual conduct to V.P. As the court of appeals held, this was not a direct comment on Petitioner's credibility, but on the credibility of a particular part of his testimony. *State v. Cappadonia, supra*, ¶ 46. Petitioner points to no record basis for finding that characterization inaccurate and no Supreme Court precedent holding such a comment is prosecutorial misconduct (Traverse, Doc. No. 13, PageID 827-828) . Surely a prosecutor can properly argue that certain testimony presented by the defense is not credible without depriving a defendant of a fair trial.

The second asserted instance of misconduct is that the prosecutor allegedly vouched for the

credibility of V.P. As the court of appeals read this argument, it was an explanation of why V.P. had no motive to fabricate the allegations in response to defense arguments that she did fabricate them because Petitioner was a strict disciplinarian. Petitioner cites no Supreme Court precedent holding such a comment to be misconduct and surely it cannot be. If a defendant points to evidence supporting a motive to fabricate, surely a prosecutor can point to opposing evidence which shows there is no such motive.

The third asserted instance of misconduct is alleged improper inflaming the passions and prejudice of the jury. The complained-of statements again pointed out to the jury the losses V.P. incurred by coming forward with her allegations. Thus, as the court of appeals found, this was also proper response, based on evidence presented and not on speculation, to the fabrication claim made by the defense, undermining V.P.'s supposed motivation to fabricate. They were not improper and indeed Petitioner points to no Supreme Court precedent in point.

Finally, Petitioner complains that the prosecutor speculated Petitioner would have proceeded to vaginal intercourse with V.P. if she had not come forward. The court of appeals correctly held that this was improper speculation, but did not prejudice Petitioner "in the context of the entire trial." *State v. Cappadonia, supra*, ¶ 53. As the precedent cited above makes clear, it is the entire trial which must be considered, and not individual comments. Given the isolated nature of this one comment, the court of appeals' decision is not a unreasonable application of the relevant Supreme Court precedent. If the Court reaches the merits of this claim, it should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, the Petition herein should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, the Petitioner should be denied a certificate of appealability. However, if the Court reaches the merits of the Second Ground for Relief and denies it on the merits, a certificate should be allowed on that question.

March 24, 2012.

s/ **Michael R. Merz**
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).